CANADY & HODGES, Appellees, v. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Appellant.

CARRIERS: Carriage of Live Stock—Negligence in Unloading. A carrier is not negligent in unloading and caring for stock at a station specially equipped for such service, even though it might have carried the stock to a more distant point on the line of its destination before

unloading, and thereby have avoided a washout on its line and a resulting delay, when to have so done would have been likely to involve the carrier in a violation of the Federal 28-hour stock-shipping law. (See Book of Anno., Vol. 1, Sec. 8114.)

Headnote 1:  10 C. J. p. 294.

Headnote 1:  4 R. C. L. 979.

*Appeal from Warren District Court.*—W. G. VANDER PLOEG, Judge.

FEBRUARY 15, 1927.

Action for damages for delay in delivery of a shipment of stock. From a verdict in favor of plaintiffs, defendant appeals. —*Reversed.*

*F. P. Henderson, J. G. Gamble*, and *R. N. Lynch*, for appellant.

*J. O. Watson*, for appellees.

ALBERT, J.—Appellees are stock buyers and shippers in the town of Hartford in this state. On Monday, the 18th day of August, 1924, appellees loaded in stock cars of the appellant at said town, two carloads of cattle, to be shipped to the Chicago market. At the same time, they signed a release or extension of time, extending the time within which the cattle could be kept in the cars without unloading, to 36 hours. These cars were started on their way, and reached the town of Silvis in Illinois at 4:10 P. M. on the 19th day of August, having been confined in the cars 24 hours continuously. (Appellees claim, 22 hours.) At Silvis, the company has large stockyards, with feed and water, and a number of employees who devote their time and attention to loading and unloading stock. These employees are on hand all of the 24 hours of the day. The cars of stock in question were there unloaded, and the stock fed and watered, in accordance with the usual practice and requirements of the law. This is the only stockyard or place the railroad company has between Davenport and Chicago which is prepared and equipped for this kind of service. The following morning, these cattle, having been reloaded, were put into a train, preparatory to carrying

them to Chicago. When this train reached a small town by the name of Atkinson, about 32 miles east of Silvis, the company was advised that at the town of Anawan, the next station east of Atkinson, the company had suffered a washout, and part of the track had been made impassable. These cars of stock were then taken from the train and returned to the stockyards at Silvis. The expectation was that the track would be repaired so as to make it passable by midnight of that day, but before the repair of the track was completed, another rainstorm in the same vicinity raised the water over the tracks, and undid all the repair work that had been previously done, necessitating a re-repairing of the tracks at this point, which was completed sometime during the next morning. As soon as the repairs were completed, the stock was promptly forwarded to Chicago.

It is stipulated that it was impossible to move the stock into Chicago over the tracks of the appellant earlier than they were actually delivered. In other words, there is no complaint of negligence after the stock was finally shipped from Silvis to Chicago. There is evidence in the record that, at Stockdale, a station west of Chicago, one Weeks, an individual, owns certain stockyards which are devoted to handling sheep, and that, on some occasions, to meet an emergency, and to comply with the 36-hour law, the company has unloaded stock in these yards. The company, however, does not own or control the same. There is also some evidence that, at the town of Burr Oak, the company has some yards, and that, on occasions, stock has been unloaded there; but the evidence shows that it is not a regular feeding station, and that the company has no employees at such stockyards for such purpose.

This stock, when it reached Chicago, met a declining market, and this action is to recover the loss caused by the decline in the market between the day on which appellees say it should have arrived and the day on which it did arrive.

On the road between the initial starting point and Silvis, there was a delay of something like four hours by reason of the disability of a fireman on a passenger train, but the court held that this was a delay for which the company was not responsible. It can, therefore, be said that, until these cars of stock reached Silvis, there is no negligence chargeable to the company. The evidence shows that the scheduled time of such train from Sil-

vis to Chicago stockyards is 16 hours. As said before, when the stock reached Silvis, it had been on the road 24 hours. Appellees claim that it was only 22 hours, but, for the purpose of this question, it makes no difference. The company was, therefore, confronted with this condition at this point, regardless of whether the stock had been confined 22 or 24 hours: It would take 16 hours to complete the journey to Chicago, which would carry the stock past the 36-hour period. The lower court rightfully held that a necessity arose, under the law, which compelled the unloading, feeding, and resting of these cattle, in compliance with the Federal statute, before they reached Chicago. Appellees contend that the transportation of the stock could have been continued either to Stockdale or Burr Oak, and that the unloading and feeding could have there occurred, instead of at Silvis, and that, had the company done so,—both of these stations being east of Anawan,—the washout would not have interfered with their prompt delivery in Chicago on the day before they did arrive. Under the holdings of the court in the case, there was but one question of negligence submitted to the jury, and that was the question of whether or not the company was negligent in unloading and feeding the stock at Silvis, instead of carrying it on and unloading and feeding it at Stockdale or Burr Oak.

The evidence shows that, if it had not been for the washout, this stock would have reached Chicago on the same train, regardless of whether it was unloaded and fed at Silvis or at Stockdale or Burr Oak. The court rightfully held that the delay caused by the washout was not chargeable to the railroad company as negligence. To put it more simply, the contention of the appellees is that, if the stock in question had not been stopped at Silvis, but had continued its journey at the time the washout occurred, it would have been east of the washout, and it could have been unloaded and fed at either Stockdale or Burr Oak, and hence would have reached the Chicago stockyards a day in advance of when it did; and appellees therefore say that it was negligence for the company to unload and feed the stock at Silvis; and this is the question that was submitted to the jury.

The United States statutes require that all stock of this character in transportation shall not be kept in cars continuously for more than 28 hours, but that, by stipulation signed by the shipper, this time may be extended to 36 hours; and a breach

of this statute on the part of the carrier carries with it a heavy penalty. In other words, the company carries stock at its peril, and is penalized if it keeps it in the cars more than 36 hours continuously. Was it negligence for the company to unload and feed this stock at Silvis, instead of carrying it on to either of the other two points referred to? We are constrained to hold, as a matter of law, that it was not. Railroad companies cannot be expected to have stockyards, with the necessary feed, water, and assistants, at every station along their lines. Reason must be used in relation to these matters, the same as in all other matters involving human affairs. This company had these stockyards, with all the necessary assistants and material, at this point, for the particular purpose of taking care of all shipments coming from the west that enter into these yards on their way to Chicago. When this stock reached Silvis, it was apparent to all parties concerned that it must be unloaded and fed and rested, as the Federal statutes require. The company had the facilities there for taking care of matters of this kind, and we can see no reason for saying that, by availing itself of them, under these circumstances, it was negligent. Even if we assume that both Stockdale and Burr Oak were places provided by the company and properly equipped for the same purpose, the scheduled time from Silvis to Burr Oak was 12 hours, which, added to the 24 hours that the stock had already been on the road, would make 36 hours, which was the limit under the Federal statute; and in view of the fact that, if the company even exceeded this 36 hours one minute, it would be liable to prosecution under the Federal statute, we feel that the action of the company, under these circumstances, was reasonable and due care.

Under the holdings of the court and the evidence in the case, the evidence is insufficient to support the verdict, and it is our conclusion that the court should not have submitted to the jury the question of negligence in stopping these two cars of stock at Silvis for the purpose of unloading, feeding, and resting the same.

Some light is thrown on this proposition by the case of *Bradford v. Hines*, 206 Mo. App. 582 (227 S. W. 889).—*Reversed.*

EVANS, C. J., and DE GRAFF and MORLING, JJ., concur.